## Bowman & Bull Company, Appellee, v. George R. Linn, trading as George W. Linn & Sons, Appellant.

## Gen. No. 22,305.

1. CONTRACTS, § 338*—*when time of breach controlling.* In an action to recover for breach of an executory contract where the defense is grounded on a breach by plaintiff, the crucial question is which party first breached the contract.

2. SALES, § 124*—*when guaranty by seller of time of arrival immaterial.* Where butter dealers, on a fluctuating market, contract for the shipment from Seattle of butter to arrive by sea about a date fixed by the seller, the time of performance of the contract is material, and in an action by the seller for nonacceptance, the rights of the buyer do not depend on whether the seller guarantied the time of arrival or whether by reason of the nonarrival of the ship by the time fixed, the buyer can maintain an action against the seller.

3. SALES, § 124*—*when delay in delivery fatal to recovery.* In an action to recover for breach by a vendee of a contract for the shipment from Seattle of butter to arrive from New Zealand about a date fixed by the seller, where owing to delays in the voyage by reason of storms and stress of weather the vessel did not arrive in Seattle until eight days after the date fixed, during which time there was a fall in the market, the initial breach *held* imputable to vendor, who, if it desired the date fixed for arrival to be approximate, should have inserted in the contract some qualifying phrase, such as "wind and weather permitting," in default of which defendant is relieved from all obligation under the contract.

4. CONTRACTS, § 294*—*when breach no ground for recovery.* In an action on an executory contract, plaintiff must show that he has complied with all the provisions of the contract on his part, and if both parties are in default, neither can maintain an action.

5. CONTRACTS, § 396*—*when erroneous to refuse to direct verdict for defendant.* In an action on an executory contract, it is error to deny defendant's motion for an instructed verdict in his favor where it affirmatively appears that plaintiff did not substantially perform the contract on his part.

6. APPEAL AND ERROR, § 1810*—*when judgment of nil capiat entered in Appellate Court on reversal.* In an action on an executory contract where it affirmatively appears that plaintiff did not substantially perform the contract, a verdict for plaintiff will be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

reversed and a judgment of *nil capiat* and for costs entered in the Appellate Court.

Appeal from the Municipal Court of Chicago; the Hon. JOSEPH P. RAFFERTY, Judge, presiding. Heard in this court at the March term, 1916. Reversed with judgment of *nil capiat* and for costs. Opinion filed October 30, 1916. Rehearing denied November 13, 1916.

J. MARION MILLER, for appellant.

PEARSON & HERRICK, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff on a trial before court and jury recovered a judgment upon the verdict of the jury against defendant for $2,184.39, and defendant appeals and assigns errors calling for a reversal.

The action is for damages for the alleged breach of a contract made between the parties, by which defendant agreed to purchase and plaintiff agreed to sell one car of New Zealand fresh creamery butter at 35½ cents per pound upon terms which were in railway parlance f. o. b. Seattle. The butter was at the time of the contract *en voyage* from New Zealand to the port of Seattle in the State of Washington, and it was represented that the ship carrying it was expected to arrive in the port of Seattle about January 7, 1914. The contract rested in a telephone conversation, which was December 31, 1913, confirmed in the following letter from plaintiff to defendant:

"Confirming telephone conversations with your Mr. Linn this morning and sale of one car New Zealand Fresh Creamery Cambridge Factory, equal to sample shown at Booth's Cold Storage a few days ago, 32½ F. O. B. Seattle, this butter is due to arrive in Seattle about January 7th, and shipment will be made as promptly as possible after goods are discharged from the ship and have passed through the customs. * * *"

On January 6th thereafter defendant wrote plaintiff:

"The car of New Zealand butter which you expect to ship about the 9th from Seattle, would like to have it come St. Paul Refrigerator freight, instead of express. Please advise promptly.    *    *    *"

It is in evidence that it usually takes about two days after the arrival of a ship in which to dock, unload, pass the customs, and start freight on its journey from the port of Seattle. The ship with the contract butter on board was delayed by stress of weather and did not arrive at Seattle until January 15th; two days thereafter the carload of butter contemplated by the contract was shipped from Seattle and arrived in Chicago on February 2nd following shipment. Plaintiff in its brief states that from December 31, 1913, to February 2, 1914, there was a "drop in the butter market of 9½ cents per pound." Defendant refused to accept the butter, assigning several reasons—among others, that it was not of the quality of the sample inspected in Booth's Cold Storage; that the butter was consigned to Cudahy Packing Company and not to defendant, and also that the butter did not arrive for delivery at the time stipulated in the contract. The butter was afterwards sold for 27 cents per pound, and it is for the difference between the contract and sale prices, with the charges for freight, etc., that plaintiff seeks to recover and for which it had judgment in the trial court.

We think the crucial and controlling question is, which of the parties first breached the contract. That time of performance of the contract was material, the evidence amply demonstrates. Whether plaintiff had represented that the ship on which the butter was being carried from New Zealand to Seattle was expected to arrive at its destination on January 7, 1914, is not a debatable question. It is clear that in faith that the ship would arrive at that time, defendant entered into

the contract. The rights of defendant do not depend upon whether plaintiff guarantied the time of arrival or whether by reason of the ship's nonarrival on time, defendant could maintain an action for damages against plaintiff. These are not controlling considerations. From the very nature of the transaction, the time of arrival of the butter was an important consideration. The market, as plaintiff admits, was fluctuating, and defendant, if bound to take the butter, must stand the loss occasioned by the nonarrival of the butter at the time specified in the contract, for which delay in arrival he is in no way responsible. The minds of the parties met as to the date when the ship should arrive at Seattle with the butter on board. This date was fixed by plaintiff from information assumedly within its own knowledge. It was the date of the arrival of a ship at sea, in the course of its voyage from New Zealand to Seattle, with commodities belonging to plaintiff, a portion of which was the subject-matter of the contract involved in this suit.

For the failure of plaintiff to take into account storms at sea and stress of weather (which it is common knowledge are often encountered in sea voyages) when fixing the time of the arrival of the ship with the contract butter in its cargo, shall the loss ensuing by reason of a falling market be chargeable to and be borne by defendant or plaintiff? We see no reason for penalizing defendant by saddling him with the loss occasioned by the nonarrival of the butter at the time fixed by plaintiff in its contract of sale. If plaintiff had intended that the date of the ship's arrival should be simply an approximate date, then there should have been inserted some qualifying phrase, such as "wind and weather permitting." The butter did not arrive at Seattle and was not in shape for delivery to defendant at the time agreed upon in the contract; the initial breach of the contract of sale is therefore imputable to

plaintiff, and defendant was consequently relieved from every obligation resting upon him under the contract. In view of such primary breach of the contract by plaintiff it cannot maintain any action against defendant for any subsequent breach of such contract on his part. In *Cincinnati, I. & W. Ry. Co. v. Baker*, 130 Ill. App. 414, the court say:

"It was incumbent upon defendant in error, before he could recover damages from plaintiff in error for an alleged breach of the contract, to allege and prove that he, himself, had complied with all the provisions of the contract upon his part. * * * If both parties are in default neither can maintain an action for a breach of the contract by the other."

The legal principle is that neither party can in any manner obtain the aid of a court to enforce in his favor a contract which, without legal excuse, he has substantially failed to perform on his part. Applying this rule to the instant case, we find that there was a breach of contract by the nonarrival of the butter at the time agreed upon by the contract and by plaintiff's inability to make delivery within the time specified in the contract. This affirmatively appears from the evidence, and the effect is to defeat the right of recovery sought by plaintiff.

At the close of plaintiff's proofs, defendant moved for an instructed verdict in his favor. This motion was denied. This action of the trial judge is assigned for error. The motion should have been allowed and a verdict instructed for defendant accordingly. For this error the judgment of the Municipal Court is reversed and a judgment of *nil capiat* and for costs will be entered in this court.

*Reversed with judgment of nil capiat and for costs.*